POSTED ON WEBSITE

FILED DCHF

AUG -7 2013

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

<u>NOT FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

In re                                          Case No. 13-10814-A-11

FL.Invest.USA Inc.,                            DC No. DMG-2

             Debtor.
_____/

**MEMORANDUM DECISION REGARDING MOTION
TO DISMISS CHAPTER 11 CASE**

A Chapter 11 case may be dismissed for lack of good faith.  Six years ago, the Nemnis paid $2.4 million to the debtor for stock and oil royalties.  After the debtor failed to perform, the Nemnis obtained judgments against the debtor, which remain unsatisfied.  Two days after a receiver was appointed, the debtor filed its petition.  Excluding insiders and the debtor's attorneys, the Nemnis are the only creditors.  Was the petition filed in good faith?

**FACTS**

FL.Invest.USA Inc. is a Florida corporation with headquarters in Delaware.  Its only significant asset is 240 acres of property, known as Pine Meadows, and in Kern County, California.  The debtor is owned by Daisy Finance, Ltd., which, in turn, is owned by Vittorino Serri and Lorenzo Serri.  The debtor's only director is Mark Marinzoli.  It has no employees.  Accounting and other support services are provided by an independent contractor, Fiduciary Support Services, Inc., which is owned by Marinzoli.

In 2007, the Serris approached creditors Aldo Nemni and  Maria Rosa Pizzorno-Nemni, who then resided in Italy, about investing in Pine Meadows, which the Serris contended had upwards of 22 million barrels of oil.  The Serris represented that they were in discussions with Caspian Oil Company to drill for the oil and promised that if Caspian Oil did not do so, the debtor would.  Over the next two years, the Nemnis and their company, Miro America, LLC, invested more than $2.4 million in the Pine Meadows project and, in exchange, were to receive 10% of the debtor's stock and 10% of its oil royalties.  The stock was never issued, and the royalties were never paid.

In 2011, the Nemnis and Miro America brought suit against the debtor in the Superior Court of California for Kern County.  *See Nemni*

2

1  *v. FL Invest USA, Inc.,* No. S-1500-CV-273755 (Cal. Super. Ct. May 19,
2  2011).  Later that same year, the state court entered default
3  judgments against the debtor in favor of the Nemnis and Miro America
4  for approximately $3,400,000 and $538,000, respectively.  The debtor
5  unsuccessfully attempted to set aside the judgments.  Abstracts of
6  judgment were then recorded in Kern County.

7        In May 2012, the debtor entered into a lease agreement with
8  Golden Sun Energy.  The terms of the lease provided Golden Sun Energy
9  the right to drill for oil on the property in exchange for a 20%
10 royalty to the debtor.  Royalty payments from Golden Sun Energy to the
11 debtor have averaged between $5,000 and $6,000 per month.  But the
12 debtor never remitted any of the funds from the royalty payments to
13 the Nemnis or Miro America.  As a result, in July 2012, the Nemnis
14 obtained a writ of execution and recorded a notice of levy with the
15 Kern County Recorder.

16       In September 2012, the parties reached a settlement whereby the
17 debtor agreed to pay the Nemnis and Miro America $3 million in
18 installments over a four-month period.  The debtor paid only the first
19 installment of $50,000 and then defaulted.  In response, the Nemnis
20 sought the appointment of a receiver in state court to capture the oil
21 royalties.

22                          **PROCEDURAL HISTORY**

23       In December 2012, two days after the state court ordered a
24 receiver appointed, the debtor filed for Chapter 11 bankruptcy
25 protection in the District of Delaware.  Schedules and statements have
26 been filed.  The debtor's assets comprise Pine Meadows valued at $6.25
27 million, the Golden Sun Energy lease, and a Wells Fargo Bank checking
28 account containing $353.46.  The debtor's only secured debts consist

                                    3

1   of the debts owed to the Nemnis and Miro America, which together total

2   $3.9 million, plus post-judgment interest.  Unsecured debts total

3   $202,258.92, of which $122,419.72 is owed to Fiduciary Support

4   Services, or its owner Marinzoli.  Other unsecured creditors include

5   two of the debtor's former lawyers and Golden Sun Energy, whose claim

6   for $50,000 arises from a loan it made to the debtor used to pay a

7   prepetition retainer to O'Kelly Ernst & Bielli, LLC, the firm employed

8   as the debtor's counsel in this case.

9       The Nemnis, who now reside in California, and Miro America moved

10  to change the venue of the case to the Eastern District of California.

11  The debtor opposed the motion, but the Bankruptcy Court for the

12  District of Delaware granted it.

13      After the transfer of venue, the meeting of creditors was

14  conducted and monthly operating reports were filed.

15      The Nemnis and Miro America brought a motion for stay relief,

16  which the court denied.  The U.S. Trustee then requested a single

17  asset real estate designation for the debtor's case.  The court

18  granted that request over the objection of the debtor.

19      The debtor has not filed a plan or disclosure statement since the

20  case was filed nearly eight months ago.  No other significant activity

21  has occurred in the case.

22      The Nemnis and Miro  America have brought a motion seeking

23  dismissal of the debtor's case.  The debtor has opposed the motion.

24

25                          **JURISDICTION**

26      This court has jurisdiction.  *See* 28 U.S.C. §§ 157, 1334; 11

27  U.S.C. § 1112; General Order No. 182 of the U.S. District Court for

28  the Eastern District of California.  This is a core proceeding.  *See*

4

1 | 28 U.S.C. § 157(b)(2)(A).

2 | <center>**DISCUSSION**</center>

3 | **I.    Lack of Good Faith in Filing Establishes Cause for Dismissal or**
4 | **Conversion.**

5 | On request of a party in interest and after notice and a hearing,
6 | the court shall convert a Chapter 11 case to Chapter 7 case or dismiss
7 | it, "whichever is in the best interests of creditors and the estate,"
8 | for cause shown.   11 U.S.C. § 1112(b)(1).   In deciding such motions,
9 | the court must engage in a two-step analysis.  *See Rollex Corp. v.*
10 | *Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14
11 | F.3d 240, 242 (4th Cir. 1994).   First, the court must ascertain
12 | whether cause exits.  *Id.*   Second, if the court finds that cause
13 | exists, it must decide whether dismissal or conversion best serves the
14 | interests of creditors and the estate.  *Shulkin Hutton, Inc., P.S. v.*
15 | *Treiger (In re Owens),* 552 F.3d 958, 960-61 (9th Cir. 2009); *Superior*
16 | *Siding & Window*, 14 F.3d at 242.

17 | Lack of good faith in filing a Chapter 11 petition may constitute
18 | cause.  *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir.
19 | 1994) (per curiam).   Such a finding should be made after consideration
20 | of all of the facts and circumstances of the case.  *Id.*   "The test is
21 | whether a debtor is attempting to unreasonably deter and harass
22 | creditors or attempting to effect a speedy, efficient reorganization
23 | on a feasible basis."  *Id.* (citing *Idaho Dep't of Lands v. Arnold (In*
24 | *re Arnold)*, 806 F.2d 937, 939 (9th Cir. 1986)).

25 | Furthermore, "[t]he term 'good faith' is somewhat misleading.
26 | Though it suggests that the debtor's subjective intent is
27 | determinative, this is not the case.   Instead, the 'good faith' filing
28 | requirement encompasses several, distinct equitable limitations that

<center>5</center>

1  courts have placed on Chapter 11 filings." *Id.* Courts have long
2  recognized that a Chapter 11 filing used to forum shop, delay, or
3  otherwise gain tactical advantage in pending litigation in a non-
4  bankruptcy forum is a species of bad faith. *See, e.g., In re SGL*
5  *Carbon Corp.,* 200 F.3d 154, 165-69 (3d Cir. 1999); *St. Paul Self*
6  *Storage Ltd. P'ship v. Port Authority of St. Paul (In re St. Paul Self*
7  *Storage Ltd. P'ship),* 185 B.R. 580, 584 (B.A.P. 9th Cir. 1995).

8       Once the movant establishes an issue as to the lack of good
9  faith, the debtor bears the burden of proving that the petition was
10  filed in good faith. *Marshall v. Marshall (In re Marshall),* --- F.3d
11  ---, No. 09-55573, 2013 WL 3242487, at *13 (9th Cir. June 28, 2013);
12  *In re SGL Carbon Corp.,* 200 F.3d at 162 n.10. The quantum of proof is
13  preponderance of the evidence. *In re Erkins,* 253 B.R. 470, 474
14  (Bankr. D. Idaho 2000).

15       Here, the court finds that the debtor's filing of its Chapter 11
16  petition was a litigation tactic and, therefore, lacks good faith.
17  First, the timing of the filing suggests a lack of good faith. *See In*
18  *re St. Paul Self Storage,* 185 B.R. at 583 (considering the timing of a
19  filing and the unsuccessful progress of litigation as bearing on
20  debtor's improper intent in filing); *see also In re Eighty S. Lake,*
21  *Inc.,* 63 B.R. 501, 509 (Bankr. C.D. Cal. 1986) (imposing sanctions for
22  bad faith Chapter 11 filing that hindered state court receiver),
23  *aff'd,* 81 B.R. 580 (B.A.P. 9th Cir. 1987). The debtor's filing came
24  five years after the Nemnis' initial investment and one and a half
25  years after the commencement of litigation in state court. However,
26  it came only two days after a receiver was appointed in state court to
27  capture the debtor's oil royalties. From these events, the court
28  infers that the debtor's primary motive was avoidance of judicial

6

process and collection activities.

Second, the debtor engaged in forum shopping. *See In re Silberkraus*, 253 B.R. 890, 905 (Bankr. C.D. Cal. 2000); *In re Cardi Ventures, Inc.*, 59 B.R. 18, 23 (Bankr. S.D.N.Y. 1985). By filing a Chapter 11 petition in this forum, the debtor gained a tactical advantage by presumptively divesting the receiver of control of the debtor's assets. 11 U.S.C. § 534(b)(1). Filing the petition in the District of Delaware also constituted forum shopping. The parties fought in state court, and the debtor lost, albeit by default. When efforts to set aside the default judgments were not successful, the debtor not only filed bankruptcy but did so in a jurisdiction far from its creditors and with which it had only nominal contacts. The bankruptcy court in Delaware found that the more appropriate venue was the Eastern District of California.

Third, this is a two-party dispute. *See In re Van Owen Car Wash, Inc.*, 82 B.R. 671, 673 (Bankr. C.D. Cal. 1988); *In re Serfass*, 325 B.R. 901, 906 (Bankr. M.D. Fla. 2005) ("Generally, the courts do not condone the use of Chapter 11 to resolve two-party disputes in the bankruptcy court when such litigation is still pending in a non-bankruptcy forum prior to the commencement of the case."). The debtor's aggregate debts are around $4.1 million, of which the Nemnis and Miro America hold $3.9 million. The only other scheduled debts comprise unsecured debts to the debtor's insiders or their affiliates, debtor's former attorneys, and a loan to pay the retainer of its Chapter 11 counsel.

Fourth, the debtor's actions before and after bankruptcy reveal an ongoing intent to stall creditors, *see In re Marsch,* 36 F.3d at 828, while retaining the benefits of the enterprise. For example,

7

after receiving funds from the Nemnis and Miro America, the debtor

failed for over six years to perform its original agreement to issue

stock or pay royalties despite being sued and determined liable by

default judgment for its failure to perform.  Another example is the

debtor's failure to uphold its renewed promise to pay under the

settlement with the Nemnis and Miro America, by which these creditors

reduced their claims in exchange for expedited payments.

Moreover, despite the passage of eight months since the petition

date, the debtor has made no appreciable effort to reorganize.  No

plan or disclosure statement has been filed.  And the debtor has

resisted the U.S. Trustee's motion to designate the case as a single

asset real estate case, which implicates the quick-trigger stay relief

provisions of 11 U.S.C. § 362(d)(3).  In the meantime, the debtor has

received and kept oil royalties under its lease with Golden Sun

Energy.

Fifth, the debtor has not shown that reorganization is

forthcoming and feasible.  *See In re Marsch,* 36 F.3d at 828.  The

Court of Appeals for the Ninth Circuit recently observed that "the

most compelling grounds for denying a motion to dismiss grounded on

bad faith" is the existence of a confirmable plan because it

"essentially refutes a contention that the case is filed or prosecuted

in bad faith."  *In re Marshall,* 2013 WL 3242487, at *14.  Here, no

plan or disclosure statement has been filed.  The period of

exclusivity has expired and was never extended.  *See* 11 U.S.C.

§ 1121(c).  The debtor contended that it intends to reorganize around

a sale of 80% of the Pine Meadows property to a group of investors led

by Telibrick Hospitality Network, Inc. and offered a signed letter of

intent from Telibrick Hospitality.  But the letter of intent is not a

8

firm commitment to proceed with the transaction, and the debtor, the one bearing the burden of proof, offered no evidence that the buyer is ready, willing, and able to complete the purchase.  Without a more certain commitment, the possible sale is insufficient evidence of a feasible reorganization.

Based on the above circumstances, the court finds that the Chapter 11 filing lacked good faith and that cause exists.

**II.    The Best Interests of Creditors and the Estate Favors Conversion.**

If the court finds that cause exists, it must decide whether dismissal or conversion best serves the interests of creditors and the estate.  *Shulkin Hutton,* 552 F.3d at 960-61; *Superior Siding & Window,* 14 F.3d at 242.  The court finds conversion better serves such interests.

First, the estate appears solvent.  Assets total $6.25 million, while debts total only $4.1 million.  Thus, there appears to be sufficient equity to pay all creditors in full.  As a result, creditors and the estate are better served by an expeditious, orderly liquidation designed to maximize value.

Second, the dismissal of the bankruptcy case may further delay creditors.  The debtor has exhibited a history of delaying payment to creditors and using process to creditors' detriment.  And further opportunities for debtor mischief exist.  For example, the debtor could file a second Chapter 11 petition.  No filing bar has been requested under 11 U.S.C. § 349(a).  If the second filing occurred within one year, it would give the debtor the benefit of the stay for at least 30 additional days, *see* 11 U.S.C. § 362(c)(3), and may protect property of the estate beyond such time, *compare Rinard v. Positive Invs., Inc. (In re Rinard),* 451 B.R. 12, 20 (Bankr. C.D. Cal.

1  2011) (section 362(c)(3) stay terminates only as to debtor), *with*

2  *Reswick v. Reswick (In re Reswick),* 446 B.R. 362, 366-69 (B.A.P. 9th

3  Cir. 2011) (stay terminates in its entirety).  A second filing would

4  also presumptively wrest control of estate property from the state-

5  court-appointed receiver.  *See* 11 U.S.C. § 543(b)(1),(d).  As a

6  result, the court finds that conversion, and not dismissal, best

7  serves the interests of creditors.

8  <center>CONCLUSION</center>

9        For these reasons, the case will be converted to a case under

10  Chapter 7 of the Bankruptcy Code.

11

12  Dated: August 7, 2013

13  _____

14  Fredrick E. Clement
    United States Bankruptcy Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<center>10</center>

# Instructions to Clerk of Court
## Service List - Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below.  The Clerk of Court will send the Order via the BNC or, if checked __X__, via the U.S. mail.

      Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if appointed in the case), and _____X____ Other Persons Specified Below:

FL.Invest.USA Inc.
112 Capitol Trail
Newark, DE 19711

Ryan M. Ernst, Esq.
901 N. Market Street, #1000
Wilmington, DE 19801

Thomas Bielli, Esq.
1600 Market St., 25th Fl.
Philadelphia, PA 19103

David M. Klauder, Esq.
901 N. Market St., #1000
Wilmington, DE 19702

Robert H. Brumfield III, Esq.
BRUMFIELD & HAGAN, LLP
2031 F Street
Bakersfield, CA 93301

D. Max Gardner, Esq.
The Law Offices of Young Wooldridge, LLP
1800 30th St., 4th Fl.
Bakersfield, CA 93301-5298

William E. Winfield, Esq.
300 Esplanade Drive, Ste. 850
P. O. Box 5167
Oxnard, CA 93031

Robin Tubesing, Esq.
Office of the U. S. Trustee
2500 Tulare St., #1401
Fresno, CA 93721